**Steve J. BEVERLY**

v.

**David CONNER et al.**

**Civ. A. No. 2421.**

United States District Court,
S. D. Georgia,
Savannah Division.
July 26, 1971.

Frank Seiler and Walter C. Hartridge, II, Savannah, Ga., for plaintiff.

J. Alvin Leaphart, William A. Zorn, Jesup, Ga., for defendants.

## MEMORANDUM AND ORDERS SUR POST-TRIAL MOTIONS

CLARY, District Judge.

Upon a verdict in favor of plaintiff Steven J. Beverly, defendants E. C. Williams and William H. Morris have filed their timely motions.

Defendant Morris moves the Court to set aside the verdict of the jury, and the judgment entered thereon, and for the grant of a new trial.

The Court cannot grant defendants' motion. The evidence presented by the plaintiff's witnesses at trial, as to defendant Morris, was clearly sufficient to justify a verdict against him, in the event that the jury chose to credit that testimony. The jury so chose, and the Court cannot say that their choice was unreasonable.

■ Defendant Morris' sixth point, an exception to a section of the Court's charge, concerning impeachment, is totally without merit. The charge complained of was not a general charge, it was clearly and specifically limited to the testimony concerning witness Overstreet's prior arrests for intoxication. Of the other acceptable grounds for impeachment listed by movant no evidence was put forward which could raise those grounds, with the possible exception of bias, and that ground was covered by the general charge to the jury. Defendants' main attempt at impeachment was based solely on that witness' prior record.

Therefore, it is, this 26th day of July 1971 ordered, adjudged and decreed that the motion of defendant Morris be and is hereby denied.

Defendant Williams timely moved for:

(1) A directed verdict in favor of said defendant, as final decision for such has been reserved by the Court, or

(2) A judgment notwithstanding the verdict for said defendant, or

(3) The setting aside of the verdict and judgment and the grant of a new trial.

■ Defendant Williams first two motions are based upon the allegations that the plaintiffs did not present sufficient evidence to show that the defendant was negligent or that any such negligence was the proximate cause of a Plaintiff's injuries. On the motion for a new trial, the defendant repeats the first two allegations and assigns error to the Court's instructions to the jury in that regard.

The basis of Defendant Williams' liability sounded not in *respondeat superior*, but in negligence. The jury specifically stated, through written interrogatory that "We, the jury, find Police Chief Williams was guilty of negligence in the use, supervision or training of the Auxiliary Police Force."

There was competent evidence from several witnesses including the defendant (*on cross examination*) indicating in part that:

(1) It was the practice of the Police Department, not to allow Auxiliary Policemen to patrol by themselves, without a regular police officer.

(2) That on the night in question, the Auxiliary Policemen were permitted to, and did, patrol alone.

(3) There was no regulation, as to what weapons the Auxiliary Police could or could not carry.

(4) There was never any instruction or training provided for the Auxiliary Policemen as to the proper use of the weapons they carried.

(5) It was infrequent (if ever) that a person volunteering for the Auxiliary Police Force was turned down.

Defendant Williams is correct in his allegation that the Court did not set forth in its charge any specific standard of conduct to which defendant should be held, nor did Plaintiff prove any particular standard.

An exhaustive survey of the applicable case law leads to the conclusion that this is a question which has not been squarely met by the Courts. As the jury was told, it would not be reasonable to hold a small community like Jesup, Ga. to the standards and training that the F.B.I. or

a large municipal police force requires. It is recognized that the facilities, finances and even needs of Jesup, Ga. would render such an imposition unfair and useless. It was therefore this Court's choice, in the absence of any higher precedent, to leave the determination of what minimal standards are required of a police chief, to a jury of twelve reasonable and unbiased Georgians. While Appellate guidance would have been, and still would be welcomed, this Court does not feel that any error was committed in that regard.

■ In instructing the jury as to defendant Williams' possible liability, the Court accepted plaintiff's requested charge #9 which Defendant takes exception to. In that charge set forth in Defendant's motion, the jury was instructed that they could find for defendant even if they credited the evidence against defendant Williams, if they found that his actions were not negligent or that they were not the proximate cause of plaintiff's injuries.

The Court then charged generally as to all four defendants on negligence and proximate cause. These charges (which were not excepted to) stated:

"Negligence has been defined as the doing of an act which a reasonable careful and prudent person would not do under the particular facts and circumstances of the case, or it is the failure to do an act which a reasonable careful and prudent person would have done under the particular circumstances of the case. The best definition that I have ever found is one word, carelessness, under the particular facts and circumstances of the case. That is negligence."

"Proximate cause of damage is that cause which in natural and continuous sequence unbroken by any efficient intervening cause produces injury and without which the result would not have occurred."

It is therefore the opinion of this Court that plaintiff's requested charge No. 9, when coupled with the general charges of the Court, was a fair statement and not prejudicial to the defendant.

Defendant Williams also assigns error to the Court use of plaintiff's requested charge No. 12. For the same reasons stated above as to defendant Morris, the Court finds that no prejudice enured from that charge.

It is, therefore, this 26th day of July 1971, ordered, adjudged and decreed that the motions of defendant, E. C. Williams for (1) a directed verdict; (2) a judgment N.O.V., and (3) for a new trial, be and hereby are denied.

On behalf of the defendants, David Conner, L. B. Warren, Jr. and U. S. Fidelity & Guarantee Company (U.S.F. & G.) motions for a new trial and a renewal of their motions for judgment on the record, which the Court has reserved were timely filed.

Each of the above defendants repeat the grounds raised by defendants Williams and Morris. The discussion and conclusions stated previously have equal application to these defendants.

■ The argument of counsel for Conner, Warren and U.S.F. & G. that the verdict against them would be against public policy in that it would destroy the effectiveness of police control of law and order in the State of Georgia is rejected. The jury could have found and under the evidence presented, did find that the entire episode was a savage and senseless beating of a prisoner already in custody for a misdemeanor offense. That it would take two law officers, each over six feet tall and weighing 240 and 260 pounds respectively to overcome a prisoner of smaller physical stature by repeatedly beating him about the head with blackjacks, inflicting injuries requiring 75–100 stitches to close the wounds inflicted, while three other officers looked on, raises a question for a jury's determination. The finding of unnecessary force is supported by the overwhelming credible evidence.

Defendants Conner, Warren and U.S.F. & G. also raise allegations of improprieties on the part of individual members of the jury panel.

It was first alleged that one juror failed to report to the Court an "altercation" that a member of her family had with a police prior to the case, in her response to a voir dire inquiry. Investigation has revealed that one juror's son had been arrested in 1952 by U. S. Marshals. No altercation or confrontation resulted and the charge was subsequently dismissed by Judge Scarlett. As a result of these findings the above defendants have abandoned this assignment of prejudice or error.

██ Lastly it is alleged that a member of the jury:

1. attempted to interview defendant Warren and his wife, and

2. did interview two defense witnesses outside of the courthouse.

Based on defendant's briefs, affidavits, offers of proof and argument received at the hearing, the Court makes the following findings of fact and conclusions of law:

1. That during trial defendant Warren informed counsel that a member of the jury had attempted to interview him and his wife.

2. At that time counsel for the defendants elected, as a trial tactic (as all evidence indicates that any bias the juror harbored was apparently in defendant's favor), not to inform the Court or opposing counsel, thereby waiving his right to object.

3. At the time of counsel's above election, he was aware of the agreement between the parties to accept an unanimous verdict of 10 or 11 jurors and that the Court could have, therefore, excused the juror and thereby avoided any possibility of controversy.

4. Had the Court been given the opportunity to examine the situation as it unfolded any possible prejudice could have been avoided by either dismissing the juror, or, in the event the Court found that no prejudice had resulted, by further instructing her as to her duty, Jordan v. United States [133 U.S.App.D.C. 102,] 408 F.2d 1305 (D.C.C.A.1969).

5. Subsequent to the above incident and prior to verdict, the same juror did interview two defense witnesses, Mr. Landon and Mr. Neal in a parking lot near the courthouse.

6. The Court finds that the tenor of the questions asked by the juror and the answers received from the witness could not have prejudiced the defendants' case. The witness merely reiterated their contemptuous opinions of the plaintiff's character and they were consistent in their downgrading of the plaintiff's reputation. It further appears from the questions asked that the juror was not overly impressed by the plaintiff. The Court, considering all the facts and considerations presented, can only conclude that no prejudice accrued to the defendants from these events. In fact, any prejudice that resulted was to the detriment of the plaintiff. It should also be reiterated that this second event could have been prevented had not counsel elected to keep his knowledge of the juror's inquisitiveness from the Court.

7. Lastly, the Court finds that, assuming arguendo, some prejudice to the defendants occurred, such was the direct result of counsel's failure to apprise the Court of the same juror's earlier actions and that the defense feeling that they had a sympathetic juror elected to waive their objection and risk any detriment (which seemed unlikely to counsel).

The stay of execution on the judgments entered March 11, 1971 is continued for 20 days from the date hereof to permit defendants to perfect their appeals with proper security entered. If no appeals are taken or proper bond not entered the stay shall be automatically dissolved.

And now, to wit, this 26th day of July 1971, it is ordered, adjudged and decreed, that the post trial motions for a verdict on the evidence and for a new trial of the defendants Conner, Warren and U.S.F. & G., be and hereby are denied.